ELIZABETH T. DENTON

*v.*

HARRISON COLE.

1. Where the owner of the equity of redemption pays off a mortgage with the funds of a third person, for the purpose of purchasing it for such third person, the mortgage will not be considered satisfied,

Denton v. Cole.

either as to the owner or subsequent encumbrancers; *aliter*, if the mortgage is paid with money of the owner, though he may pay it for the purpose of repledging it.

2. A mortgage may be assigned, in equity, by mere delivery, without writing.

3. It is a rule of equity that, where one of two innocent persons must suffer, he must bear the loss who, by his negligence, has made injury to one or the other possible.

On petition of Jacob Kimble, and proofs, and order to show cause why final decree shall not be opened and bill dismissed as to petitioner.

*Mr. Lewis Cochran*, for petitioner.

*Mr. Thomas Kays*, for complainant.

THE VICE-CHANCELLOR.

The petitioner asks that the final decree in this case be opened, and the bill, so far as he is concerned, be dismissed, on the ground that the complainant's mortgage, as to him, must be considered paid. The petitioner was not made a party to the suit originally, in consequence of his failure to record the assignment of the mortgage under which he claims, but his assignor was. The petitioner has since been admitted on his own application. The facts material to the point in dispute are, briefly, these : The complainant's mortgage was executed and recorded in 1862, and that of the petitioner in 1868. The mortgaged premises were conveyed to John E. Howell, December 5th, 1870. Howell, between December 13th, 1870, and February 18th, 1871, paid, in four payments, the amount due on the complainant's mortgage to its then owner, Andrew J. Gale. None of these payments were endorsed on either the bond or mortgage, but a loose receipt was given for each. The mortgage was not cancelled nor in any way spoliated. Howell, for some years prior to the time these payments were made, had had charge

of the complainant's money for the purpose of keeping it invested, and when they were made he held over $4,000 of her money for investment. Howell says his payments to Gale were made with the complainant's money, and for the purpose of purchasing the mortgage for her. He also says that at the time the last payment was made he took an assignment of the mortgage to the complainant, which subsequently became lost. Another assignment was then procured, which bears date and is acknowledged August 1st, 1873. Mr. Gale denies that he ever made but one assignment, and that, he swears, he signed in May or June, 1874.

The question in dispute, it will thus be seen, is, Were the payments by Howell made in purchase or in satisfaction of the complainant's mortgage? The legal rules to be applied in its solution are free from all doubt. If Howell paid the mortgage with his own money, the debt was thereby discharged, and from that moment the mortgage ceased to have any force whatever against the petitioner, but if, on the contrary, the money he used was the money of the complainant, and he used it, not to pay, but to purchase, the mortgage for the complainant, the debt was not discharged, and the grasp of the mortgage, as a lien on the property, was never lost nor relaxed. *Hoy* v. *Bramhall*, 4 *C. E. Gr.* 563. A mortgage may be assigned, in equity, by delivery, without writing. *Galway* v. *Fullerton*, 2 *C. E. Gr.* 394. It is therefore unimportant whether Howell took an assignment to the complainant at the time he made the last payment or not. The evidence on this point is only material so far as it tends to affect Howell's credibility. Howell swears the money he used in paying Gale was the money of the complainant, which he held for investment for her, and that his payments were made in purchase for her, and not in satisfaction of the mortgage. Can these statements be believed? This question covers the whole field of inquiry.

Howell alone knows whose money he used. No attempt has been made to impeach his character. A man of his age, profession and large business transactions must have

Denton *v.* Cole.

had a well-established character. In the absence of proof to the contrary, it must be presumed to have been unassailable. Courts are not at liberty to cast aside the testimony of a witness against whom nothing is shown, and whose story is intrinsically reasonable and probable. It is true Howell is contradicted, but I am not sure that the opposing evidence is so unmistakably true as to show clearly that his is the false and the other the truthful. Most of the contradictions would seem to be rather the result of infirmity of memory, or honest misapprehension, than willful falsification. Mr. Gale says the assignment he made to the complainant was signed by him in May or June, 1874, and that, at the time he signed it, it was not dated, and that he never acknowledged it. The assignment put in evidence bears date August 1st, 1873, and has a certificate of acknowledgment appended bearing the same date. It is not disputed that Mr. Gale consulted counsel, before executing it, whether it was proper for him to sign it or not. It is probable that the assignment was submitted to his counsel. No careful counsel would advise with a client respecting an act so important, unless the paper was before him, nor would the omission of a date, or the insertion of a false date be likely to escape his attention.

It is clear that Mr. Gale is mistaken, when he says he did not acknowledge the assignment, or that the certificate of acknowledgment to this paper was procured by fraud or corruption. There is nothing in the evidence which will justify even a suspicion that a resort to such desperate means was necessary in order to procure an assignment. On the contrary, it appears that Mr. Gale was entirely willing to execute an assignment, on being satisfied that it was proper for him to do so. I think the papers bear very cogent testimony against the accuracy of Mr. Gale's recollections, and that, as between his recollection and that of Mr. Howell, they show that Mr. Howell's is much the more trustworthy.

It is also undisputed that, at the time the payments were made to Mr. Gale, Mr. Howell had sufficient money, belonging to the complainant, in his hands, to make the payments; the payments covered a period of nearly three months, but neither of them was endorsed on the papers—and the weight of the evidence shows that Howell directed that they should not be—and, although Howell was the owner of the mortgaged premises, and had possession of the mortgage from March, 1871, to the summer of 1874, he preserved it in its original condition, without cancellation or spoliation. The corroborating force of these circumstances serves, in my opinion, to dispel all doubts as to the truth of Howell's story. I believe the money he paid to Mr. Gale was the money of the complainant, and that he paid it in the purchase of the mortgage for her.

I am satisfied that the evidence of the gentleman who induced the petitioner to purchase the mortgage now held by him, in respect to what he says Howell said to him about the complainant's mortgage, is the result of a misapprehension. He says he knew that the complainant's mortgage stood open on the record while he was endeavoring to induce the petitioner to purchase the mortgage now held by him, but, that he ascertained from Howell, before the assignment was made to the petitioner, that the mortgage now held by the complainant was paid. He subsequently required Howell to guaranty the payment of the petitioner's mortgage. The assignment was made to the petitioner November 22d, 1871, and Howell's guaranty bears date December 2d, 1871. If what passed between the witness and Howell was understood by both to refer to the complainant's mortgage, and if it was clearly understood by both that the complainant's mortgage was paid, yet stood open on the record, it is difficult to conceive why its surrender for cancellation was not demanded when the assignment was made to the petitioner, or subsequently, when the guaranty was required, or why the guaranty was not so drawn as to assert distinctly that it was paid. But it is also proper

Ransom *v.* Geer.

to say that, at the time the petitioner took the assignment of his mortgage, he knew that the complainant's mortgage was prior to his, and that it still stood open on the record. So far as the evidence shows, he made no effort, then or subsequently, to have it discharged. His conduct was extremely careless, and this fact clearly brings him within the rule which declares that, where one of two innocent persons must suffer, he must bear the loss who, by his negligence, has made injury to one or the other possible.

The petitioner's proofs are insufficient, in my judgment, to dislodge the complainant from the position she is entitled to on the papers. The order to show cause must be discharged, with costs.